[Civ. No. 38896. First Dist., Div. Four. Jan. 11, 1977.]

M. R. BELL, Plaintiff and Appellant, v.
CITY OF MOUNTAIN VIEW, Defendant and Respondent.

334

**COUNSEL**

Turner & Sullivan and Richard K. Turner for Plaintiff and Appellant.

Bruce W. Liedstrand, City Attorney, and Richard S. Whitmore for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—Appellant M. R. Bell, doing business as AAA Ambulance Company, appeals from a judgment denying a writ of mandate to compel respondent City of Mountain View to issue him a permit to conduct an ambulance service within that city. The judgment followed an order sustaining a general demurrer to appellant's second amended petition without leave to amend.

It was alleged that, prior to April 7, 1969, appellant operated the AAA Ambulance Company in Santa Clara County and the surrounding area pursuant to permits issued by the California Highway Patrol as authorized by then Vehicle Code section 2416. Since April 7, 1969, appellant has been licensed by the highway patrol to operate an ambulance service pursuant to Vehicle Code section 2500 et seq.

Appellant applied to the City of Mountain View for a business license to operate his ambulance service within the city's boundaries. The city declined to issue such a permit on the ground that petitioner had failed to additionally apply for a special "ambulance license" as required by chapter 4 of the Mountain View city code. It is a misdemeanor under the city code for any person to operate an ambulance service within the city

without first obtaining this special license. Pursuant to section 4.7 of chapter 4, an ambulance license can only be obtained if the city council finds, after reviewing a report by the chief of police, that the "public convenience and necessity require the proposed ambulance service . . . ."[1]

Appellant then petitioned for a writ of mandate to compel issuance of a permit to conduct an ambulance service. The superior court ruled that appellant would have to exhaust his administrative remedies by applying for the special ambulance license before he could seek mandamus. Appellant thereupon submitted an application for a license to operate ambulances pursuant to chapter 4 of the city code. The chief of police reported to the city council that appellant had complied in every respect with all state and local laws, ordinances and regulations, but recommended that appellant's application be denied on the ground of lack of public convenience and necessity, because "It appears that the citizens of Mountain View are being adequately serviced by the existing companies." After a public hearing on appellant's application, the city council resolved that the public convenience and necessity did not require an additional ambulance service, and denied the application. Appellant then returned to the superior court with a second amended petition, again seeking a writ commanding the city to issue him a permit to operate an ambulance service. It is from the judgment entered after a general demurrer to the second amended petition was sustained, without leave to amend, that appellant now appeals.

---

[1]The full text of section 4.7 of the Mountain View city code reads as follows:

"After the chief of police has made an investigation of the application, as provided for in section 4.4, he shall submit his findings and recommend to the city council either the approval or the rejection of the application. The city council may thereafter grant the permit and direct the issuance of a license for a specified number of vehicles by the director of finance when it finds:

"(a) That public convenience and necessity require the proposed ambulance service for which application has been submitted. In determining whether public convenience and necessity require the licensing of the proposed ambulance service, the city council shall consider whether the public is, at that time, adequately served; the financial responsibility of the applicant; the number, kind and type of equipment; the schedule of rates proposed to be charged and such other facts as the city council shall consider relevant.

"(b) That the ambulances, drivers, attendants and premises have been certified by the chief of police as provided herein.

"(c) That the applicant and all attendants and drivers are fit and proper persons to conduct or work in the proposed business.

"(d) That all the requirements of this chapter and all other governing laws and ordinances have been met.

"Such license shall be renewable annually upon payment of the annual license fee. (Ord. No. 175.607, Sec. 7; Ord. No. 175.725, Sec. 1; Ord. No. 175.809, Sec. 24; Ord. No. 175.813, Sec. 1.)"

Appellant contends that the state preemption of the field of ambulance licensing rendered the City of Mountain View powerless to prohibit his ambulance service from operating within the city's borders. Appellant points to recent additions to the Vehicle Code which he claims resulted in a change from a permit system of state ambulance regulation to a licensing system. He submits that the legislation demonstrates that the state had decided to license ambulance services in the same way that it licenses numerous other occupations and professions. Appellant argues that since no local jurisdiction has the power to issue a license in the first instance to a person to engage in any of those occupations, a local jurisdiction is likewise powerless to issue licenses for the operation of an ambulance service.

The substance of appellant's argument was recently rejected in *Sievert* v. *City of National City* (1976) 60 Cal.App.3d 234, 236 [131 Cal.Rptr. 358], where the court held that Vehicle Code section 2512, subdivision (b), demonstrates that the area of ambulance licensing has not been preempted by state law.

Prior to 1969, the state's role with respect to ambulance regulation was limited to the issuance of permits by the California Highway Patrol to "authorized emergency vehicles." (See Veh. Code, § 2416.) During the 1968 session, however, the Legislature enacted sections 2500 to 2512, and 2540 to 2549, of the Vehicle Code, which pertain to the "licensing" of ambulance operators. (Stats. 1968, ch. 1309, § 5, p. 2466.) Sections 2500 to 2512 concern the requirements for obtaining a state ambulance license from the commissioner of the highway patrol, while sections 2540 to 2549 specify the grounds and procedure for denial, suspension, or revocation of a license. The section of the Vehicle Code provisions most closely pertinent to this appeal is section 2512, which provides in part:

"(a) The commissioner [of the California Highway Patrol], after consultation with, and pursuant to the recommendations of, the State Department of Health and the Department of Motor Vehicles, shall adopt and enforce such reasonable regulations as he determines are necessary for the public health and safety regarding the operation, equipment, and certification of drivers of all ambulances used for emergency services. . . .

"(b) This section shall not preclude the adoption of more restrictive regulations by local authorities, but it is the intent of the Legislature that regulations adopted by the commissioner pursuant to this section shall be

the minimum necessary to protect public health and safety, and shall not be so restrictive as to preclude compliance by ambulances operated in sparsely populated areas. . . ."

The regulations which the commissioner has adopted pursuant to section 2512 are published in title 13 of the California Administrative Code, chapter 2, subchapter 5.

■ In general, preemption by state law exists if one of three tests is met: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859-860 [76 Cal.Rptr. 642, 452 P.2d 930]; *Yuen* v. *Municipal Court* (1975) 52 Cal.App.3d 351, 354 [125 Cal.Rptr. 87]; *People* v. *Mueller* (1970) 8 Cal.App.3d 949, 953-954 [88 Cal.Rptr. 157].)

■ Examination of Vehicle Code section 2500 et seq. and the regulations adopted pursuant thereto reveals that the field of ambulance licensing has not been "fully and completely" covered by state law as is required under the first test for preemption. The state licensing scheme does not include ambulances used for nonemergency purposes, which is apparently the type of service which appellant desires to conduct in the City of Mountain View. In fact, the area of nonemergency ambulance service appears to be completely unregulated by state law. Moreover, the Vehicle Code provisions are limited to the imposition of standards for the "operation, equipment, and certification of drivers" of ambulances. (Veh. Code, § 2512, subds. (a), (b).) Many additional aspects of ambulance industry regulation, such as rates, advertising, and distribution of services, are not touched by the state licensing design. The primary focus of that design is the adequacy of ambulance equipment and field personnel; there is no pervasive regulation of the "ambulance business" as such.

The subject matter has not been covered by state law in such terms as to indicate that a paramount state concern will not tolerate additional local action as required under the second test for preemption. Vehicle

Code section 2512, subdivision (b), specifically authorizes regulation at the local level, subject to the sole limitation that such regulation not preclude ambulance service to sparsely populated areas. "Where the statute contains language indicating that the Legislature did not intend its regulations to be exclusive, the general rule permitting additional supplementary local regulations has been applied." (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 683 [3 Cal.Rptr. 158, 349 P.2d 974]; *Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 371 [125 P.2d 482, 147 A.L.R. 515]; *Stewart* v. *County of San Mateo* (1966) 246 Cal.App.2d 273, 282 [54 Cal.Rptr. 599].)

■ The final test—that the adverse effect on transient citizens outweighs any possible benefit to the municipality—has likewise not been met. The city's licensing ordinance avoids any interference with the free flow of intercity commerce by exempting ambulances operating from a point outside the city to a destination within the city or proceeding through the city while en route to a destination outside the city. (Mountain View City Code, § 4.3; cf. *Sievert* v. *City of National City, supra,* 60 Cal.App.3d 234, 237.) The ordinance thus applies only to ambulance firms which pick up patients within the City of Mountain View.

Appellant argues that, even if the state provisions allow regulation of some aspects of an ambulance business by local authorities, total prohibition is not authorized. He argues that Vehicle Code section 2512, subdivision (b), was only intended to allow local entities to impose additional health and safety regulations which are *equally* applicable to all state-licensed ambulance firms operating within each respective jurisdiction, maintaining that a city may not select and choose among equally qualified firms.

Virtually the identical argument was made and rejected in *Subriar* v. *City of Bakersfield* (1976) 59 Cal.App.3d 175, 194-202 [130 Cal.Rptr. 853], where a Bakersfield ordinance was attacked which also required a showing of public convenience and necessity before an ambulance company could do business in the city. The ambulance company admitted that the city could enact and equally enforce upon all ambulance operators reasonable rules as to the conduct of their business, but argued that the city had no right to grant a city ambulance business monopoly to certain persons and exclude all others. (59 Cal.App.3d at p. 197.) The Court of Appeal rejected the contention, finding no fundamental right to conduct an ambulance business on city streets and

holding that the ordinance in question was reasonably calculated to protect the public. (59 Cal.App.3d at pp. 201-202.)

The holding in *Subriar* finds support in two cases involving the regulation of taxicab companies: *In re Petersen* (1958) 51 Cal.2d 177 [331 P.2d 24], and *Luxor Cab Co.* v. *Cahill* (1971) 21 Cal.App.3d 551 [98 Cal.Rptr. 576].

Relying on the supremacy clause of the United States Constitution (art. VI, cl. 2), appellant argues that the city's ambulance licensing ordinance has been preempted by federal law. In support of this thesis, he cites title XVIII, section 1802, of the Medicare Act (42 U.S.C. § 1395a), which provides: "Any individual entitled to insurance benefits under this subchapter may obtain health services from any institution, agency, or person qualified to participate under this subchapter if such institution, agency, or person undertakes to provide him such services."

This argument was rejected in the *Subriar* case, *supra,* where the court noted: "[I]n defining hospitals and many other health care services the [federal] act includes in the definitions that the hospitals or services be licensed or approved by the state or locality responsible for licensing or approving hospitals (e.g., 42 U.S.C. § 1395x(e)(7); (s)(10)). Although no express licensing requirement appears in the definition of ambulance service (42 U.S.C. § 1395x(s)(7)), the clear implication under section 1801 (42 U.S.C. § 1395) is that local or state licensing laws control such services as well. Respondent's argument is without merit, finding its greatest substance in the pomposity of the term 'federal supremacy.' " (59 Cal.App.3d at p. 207.) No preemption by federal law has been shown in the present case.

Appellant's final contention is that "public convenience and necessity" is an impermissibly vague guide for the police chief and city council to apply in issuing ambulance licenses. In support of this contention, he argues basically two points: (1) that there were no standards or criteria to guide the police chief and city council in the exercise of their judgment, and (2) that the police chief and city council were possessed of no special competence which would allow them to determine the sufficiency of ambulance service. But the ordinance provides that in determining the issue of public convenience and necessity the city council must consider "whether the public is, at that time, adequately served; the financial responsibility of the applicant; the number, kind and type of equipment; the schedule of rates proposed to be charged and such other facts as the

city council shall consider relevant." (Mountain View City Code, § 4.7.) " 'The granting of discretionary power, not restricted by specific standards, to confer or deny licenses or permits has been upheld in a variety of situations, particularly where the licensed activity is dangerous or objectionable.' " (*Subriar* v. *City of Bakersfield, supra,* 59 Cal.App.3d 175, 204, quoting *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 141 [40 Cal.Rptr. 171]; see also *In re Petersen, supra,* 51 Cal.2d 177, 184-185.)

Under the city code, it is the city council which makes the determination as to whether the public convenience and necessity will be served, and not the chief of police, although his recommendation is considered. (Mountain View City Code, § 4.7.) ■ In any event, " '[d]elegation of power to a municipal officer to refuse permits to businesses which are subject to police regulation is constitutional, and it is presumed that such authorities have not acted arbitrarily but in the exercise of. sound discretion.' " (*Subriar* v. *City of Bakersfield, supra,* 59 Cal.App.3d 175, 204-205, quoting *San Francisco Street Artists Guild* v. *Scott* (1974) 37 Cal.App.3d 667, 674 [112 Cal.Rptr. 502].)

Although it is presumed that local authorities have duly performed their public duty, if an abuse of discretion is shown relief can be obtained in the courts. (*In re Petersen, supra,* 51 Cal.2d 177, 185; *San Francisco Street Artists Guild* v. *Scott,. supra,* 37 Cal.App.3d 667, 674.) The petition contained an allegation to the effect that the city council had acted "arbitrarily and capriciously" in applying the test to appellant's application. In sustaining the demurrer, the trial court ruled that the exhibits attached to the petition showed that the council had not abused its discretion. It appears that the court erred in sustaining the demurrer on this basis; if the pleading was sufficient, appellant was entitled to have the action tried.

The question presented in the instant case concerns the exercise of discretion, not the failure to perform a ministerial act. ■ Administrative mandamus is nevertheless an available remedy if the order or decision sought to be reviewed is the result of a proceeding in which (1) by law a hearing is required to be given, (2) evidence is required to be taken, and (3) the determination of the facts is the responsibility of the administrative body. (Code Civ. Proc., § 1094.5, subd. (a); *Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 572 [58 Cal.Rptr. 664].) The ambulance licensing ordinance which appellant attacks contemplates a factual determination made after a hearing at which evidence is taken;

appellant has therefore alleged facts which *potentially* bring him within the provisions of section 1094.5 of the Code of Civil Procedure. (*Gong v. City of Fremont, supra,* 250 Cal.App.2d 568, 573.)

■ The inquiry in an "administrative mandamus" proceeding is limited to whether the respondent acted without or in excess of its jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded as required by law, if the order or decision is not supported by the findings, or if the findings are not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b); *Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 123-124 [109 Cal.Rptr. 799, 514 P.2d 111].) Therefore, in order to prevail against a general demurrer, the petition must allege facts showing entitlement to relief on one of these grounds. (*Gong v. City of Fremont, supra,* 250 Cal.App.2d 568, 573.) "Allegations that the acts of a commission or board were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law which are not to be deemed admitted by a demurrer." (*Faulkner v. Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d. 659].) (7) The petition in the case at bench fails to set forth any factual allegations which would support appellant's claim of arbitrary action. For example, there is no allegation of the existence of evidence before the council which would contradict the finding that ambulance service in Mountain View is currently adequate. Neither is there any factual allegation of procedural irregularity. To state a cause of action, appellant must allege more than mere conclusions of law; he must aver the specific facts from which the conclusions entitling him to relief would follow. (*Faulkner v. Cal. Toll Bridge Authority, supra,* 40 Cal.2d 317, 330.) The demurrer was sustained without leave to amend as to the second amended petition. There is no indication that appellant has been deprived of a fair opportunity to plead facts showing the existence of a cause of action for administrative mandamus.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1977.